**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Martin, ) | No. CV-20-02192-PHX-SPL |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| TEKsystems Management ) Incorporated (Fn), et al., ) | |
| Defendants. ) | |

**I.   BACKGROUND**

Defendant TEKsystems is a staffing company. (Doc. 1 at ¶ 13). TEKsystems placed Plaintiff Michael Martin as a Network Engineer for Defendant American Airlines, one of TEKsystems' clients. (Doc. 13 at 2). On November 3, 2020, Plaintiff filed a Complaint in this Court alleging disability discrimination, failure to engage in the interactive process, failure to accommodate, and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Doc. 1). Before the Court is Defendant TEKsystems' Motion to Compel Arbitration (Doc. 13).

When TEKsystems first hired Plaintiff, Plaintiff was required to sign, and did electronically sign, a "Mutual Arbitration Agreement." (Doc. 13 at 3). The agreement states in pertinent part:

> [A]ll disputes, claims, complaints, or controversies . . . including . . . discrimination and/or harassment claims; retaliation claims; . . . and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance,

>> or common law arising out of and/or directly or indirectly related to my . . . employment with the Company . . . are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury.

(Doc. 13-1 at ¶ 7).

Plaintiff alleges that he "had never seen the alleged arbitration agreement and denie[s] signing it." (Doc. 16 at 2). Plaintiff also argues that "American Airlines, the other Defendant, is not a party to the arbitration agreement and has answered the Complaint" so "the Court should stay [the TEKsystems] claims rather than dismiss the action" so his claims against American can proceed. (Doc. 16 at 1). Plaintiff further asserts he agreed he "would stipulate to move his claims **against TEKsystems only** (not his claims against American Airlines) to arbitration **but only if** Mr. Martin and TEKsystems could stipulate to certain related issues," but that a stipulation was never reached. (Doc. 16 at 2) (emphasis in original).

## II.   LEGAL STANDARD

"The standard the court applies in making the arbitrability determination is similar to the summary judgment standard, and the court should review the record to determine if the party opposing arbitration has raised any triable issue of fact." *The O.N. Equity Sales Co. v. Thiers*, 590 F. Supp. 2d 1208, 1211 (D. Ariz. 2008). "The court does not require an evidentiary hearing when the underlying factual circumstances which are relevant to the court's determination of arbitrability are undisputed." *Id.* "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

## III.   ANALYSIS

In determining whether a motion to compel arbitration should be granted, the court generally "ask[s] only (1) whether there is a valid arbitration agreement and (2) whether

the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). Here, Plaintiff does not dispute that his asserted claims fall within the arbitration clause; the only issue is whether the agreement is valid.

**A. Enforceability of Arbitration Agreement**

*1. E-Signature*

Plaintiff first argues his e-signature is not binding and enforceable under the Arizona Electronic Transactions Act ("AETA"), Ariz. Rev. Stat. §§ 44-7000-7052. (Doc. 16 at 5). Under the AETA, an electronic signature is only secure if it was: (1) "Unique to the person using it," (2) "Capable of verification," (3) "Under the sole control of the person using it," and (4) "Linked to the electronic record to which it relates in such a manner that if the record were changed the electronic signature would be invalidated." Ariz. Rev. Stat. § 44-7031.

Plaintiff argues that TEKsystems "provides no evidence showing that it electronically verified that Mr. Martin signed the document." (Doc. 16 at 5). Plaintiff relies on *Smith v. Rent-A-Ctr., Inc.*, No. 118-CV-01351-LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019) for the proposition that Plaintiff's electronic signature here is not binding. However, not only does that case interpret California law and not Arizona law, but it is also distinguishable. There, the court specifically noted that "evidence of use of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name inputted by the user." *Id.* at *5. In fact, the court also noted that "the act of inputting a username and password, itself, has been found sufficient to constitute an electronic signature." *Id.* However, the court found that the plaintiff's signature was not sufficiently authenticated because the defendant's affidavits failed to properly explain the authentication process. The court explained:

> Nowhere in this statement does [Defendant] explain how he inferred that it was Plaintiff who created and entered the password, how he ascertained that the electronic signature was the act of Plaintiff, or how he determined that the form was signed on October 4, 2016. No steps are detailed; no audit trail discussed. It is, in fact, entirely unclear at what point [Plaintiff]

3

> entered his password in order to sign the agreement, and whether creating his password and later signing the arbitration agreement were two of several steps in his onboarding or the only onboarding steps he was asked to complete. There is no discussion of timestamps or IP addresses. There is also no mention of Plaintiff's username.

*Id.* at *6. Instead, the affidavit "summarily assert[ed] that 'the [Electronic Signature and Acknowledgment Agreement] process involves the employee creating a unique and secret password, which serves as the employee's electronic signature. [Plaintiff] signed the Electronic Signature and Acknowledgement Agreement by entering his unique and secret password.'" *Id.*

Here, TEKsystems' onboarding system requires candidates to "create a unique username and password, as well as three security questions, which are asked whenever the candidate logs into his or her invitation." (Doc. 19 at 3). Furthermore, the affidavit of Defendant's Regional Human Resources Manager, Allison Schenk, details the process by which the electronic signatures are authenticated. (Doc. 13-1). For example, Ms. Scheck answers the question of "how [s]he inferred that it was Plaintiff who created and entered the password": the Onboarding Automation system, before allowing the individual to create a username and password, requires that the employee "provide their first, middle, and last name, social security number, date of birth, gender, race, veteran status, home address, home and cell phone number, email address, marital status, emergency contact information, and tax withholdings." (Doc. 13-1 at ¶ 4). Similarly, the affidavit answers the question of "whether creating his password and later signing the arbitration agreement were two of several steps in his onboarding": Ms. Scheck explains that "Before an individual may complete their employment hiring process, he or she must first register with Onboarding Automation, create a username and password, and complete new-hire paperwork online. Once a job offer of temporary employment has been extended, a Field Support Group Representative completes necessary fields in PeopleSoft specific to the employee's assignment in order to initiate a Welcome Email. A web-secure link for Onboarding Automation is included in the email for the contract employee that is specific

4

to that individual and the position for which the individual has been hired. It is sent to the email address provided by the individual." (Doc. 13-1 at 3).

Ms. Scheck provided even more detail in her Supplemental Affidavit (Doc. 19-1). There, she explains that "[p]re-employment electronic paperwork is provided to a job candidate through an invitation sent to the email address provided by the candidate. Each invitation has a unique candidate identification number, which links the candidate to his or her own set of paperwork." (Doc. 19-1 at ¶ 5). Then, the employee "must create a unique username and password. The password is not accessible to backend system users." (Doc. 19-1 at ¶ 6). After the username and password is created, the employee creates three security questions, "at least one of which is asked each time the candidate subsequently logs into his or her invitation to complete the electronic paperwork." (Doc. 19-1 at ¶ 7). Then, the employee must sign a Disclosure Acknowledgement, and only at that point may he "proceed through the pre-employment electronic paperwork." (Doc. 19-1 at ¶ 9). Ms. Scheck also explains that each document signed as an "AG Onboarding" number, which "tie[s] the electronically-signed document to a particular candidate." (Doc. 19-1 at ¶ 14). Further, unlike the signature in *Smith*, the signature here includes the date and time at which Plaintiff signed the agreement, and Ms. Scheck explains the process at which that timestamp is generated. (Doc, 19-1 at ¶ 14). This Court finds that the details process outlined in Ms. Scheck's affidavits is sufficient to authenticate Plaintiff's signature.

Having established that Plaintiff's electronic signature is authentic, the Court now turns to Plaintiff's claim that he does not remember signing the agreement, and that he does not believe he did so. The Court finds these assertions insufficient to invalidate the electronic record. *See, e.g. Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 6459642, at *6 (M.D. Tenn. Nov. 3, 2020) ("[Defendant] presented evidence establishing that [plaintiff] electronically signed the Arbitration Agreement. In response to this evidence, [plaintiff] asserts in his declaration only that he 'do[es] not believe' that he entered into an arbitration agreement and 'do[es] not recall reviewing or signing an arbitration agreement on October 31, 2018.' The court finds that this testimony

is not sufficient to refute [defendant]'s electronic records establishing that [plaintiff] did, in fact, affix his electronic signature to the document.") (internal citations omitted); *Stephens v. Frisch's Big Boy Rests.*, No. 1:19-CV-954, 2020 WL 4754682, at *3 (S.D. Ohio July 30, 2020) ("Plaintiff's naked assertion that she did not sign the arbitration agreement, without more, is insufficient to raise a dispute of material fact regarding the validity of the arbitration agreement or whether she electronically acknowledged the arbitration agreement."); *Franklin v. Cracker Barrel Old Country Store*, No. 4:17 CV 00289 JMB, 2017 WL 7691757, at *4 (E.D. Mo. Apr. 12, 2017) ("[The plaintiff's] testimony that she did not recall reviewing or agreeing to the Arbitration Agreement is not sufficient to refute the [defendant's] [online] system record that she had done so."); *Morgan v. United Healthcare Servs., Inc.*, No. 1:12-cv-676–HJW, 2013 WL 1828940, at *3 (S.D. Ohio Apr. 30, 2013) ("In her affidavit, plaintiff . . . indicates she does not 'believe' she submitted an electronic signature 'that agreed to arbitration.' Such conjecture is belied by the record and provides no basis to avoid arbitration. . . . To the extent plaintiff suggests she does not remember, this fails to create any issue as to whether the parties had a valid agreement to arbitrate."). Plaintiff's signature is valid and binding.

## 2. *Unconscionability*

Under Arizona law, "[p]rocedural unconscionability addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Clark v. Renaissance West, L.L.C.*, 232 Ariz. 510, 512, ¶ 8, 307 P.3d 77, 79 (App. 2013) (internal quotations and citation omitted). "Nothing in applicable Arizona law requires a drafter to explain the provisions of standardized contracts, nor does the post-hoc regret of a party to such a contract suffice to demonstrate unconscionability." *Rizzio v. Surpass Senior Living LLC*, 248 Ariz. 266, 271, 459 P.3d 1201, 1206 (Ct. App. 2020).

Plaintiff argues that, even if his signature is binding, the arbitration agreement is procedurally unconscionable because it was "part of a large set of employment-related documents TEK allegedly presented him all at once." (Doc. 16 at 6). Plaintiff further asserts

that "TEKsystems drafted all these documents," and that Plaintiff "had no ability to negotiate the terms of those documents." (Doc. 16 at 7).

In assessing procedural unconscionability, courts consider "whether the contract was separate from other paperwork, whether the contract used conspicuous typeface, and whether the contract was signed hurriedly and without explanation in emergency circumstances." *Duenas v. Life Care Centers of Am., Inc.*, 236 Ariz. 130, 135, 336 P.3d 763, 768 (Ct. App. 2014) (internal quotations omitted). Here, the arbitration agreement was clearly titled, in upper-case, bolded, and underlined font: **MUTUAL ARBITRATION AGREEEMNT ("AGREEMNT")**. (Doc. 13-1 at 9). Further, Plaintiff presents no evidence that he was in any way rushed to sign the agreement. It is also worth noting that Plaintiff is an adult employed as an engineer.

The only argument for which Plaintiff provides any analysis regarding unconscionability is that the Arbitration Agreement was presented in a set of several other documents. Plaintiff identifies eight other documents that he was required to sign along with the arbitration agreement. (Doc. 16 at 7). However, the fact that the agreement was its own separate document requiring its own signature, and was conspicuously labeled, precludes an unconscionability finding here. *See, e.g.*, *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1079 (E.D. Cal. 2014) (arbitration agreement between employee and employer was presented individually, and, thus, was not procedurally unconscionable on basis that it was allegedly buried in several other documents, where the arbitration agreement was clearly labeled, in bold font, "Mutual Arbitration Agreement," and it was its own two-page document with its own signature lines); *Duenas*, 236 Ariz. at 136, 336 P.3d at 769 (rejecting the plaintiff's procedural unconscionability argument as to arbitration agreement, despite that it was included with other documents, because she "had an opportunity to review each agreement and exercise independent judgment when deciding whether to sign it"); *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 964 (9th Cir. 2012) (rejecting plaintiff's procedural unconscionability argument because "[t]he arbitration agreement is not buried within the document; it is conspicuous and appears in

its own section of the Note"); *Thrash v. Towbin Motor Cars*, No. 2:13-CV-01216-MMD, 2013 WL 6210632, at *3 (D. Nev. Nov. 26, 2013) (rejecting plaintiff's procedural unconscionability argument that the arbitration agreement was "buried in a stack of other documents" because the agreement's "title, which is in larger font and is underlined, clearly states" that it is an arbitration agreement, so there was "nothing hidden or even inconspicuous about the arbitration clause in the Application"). The agreement here is not procedurally unconscionable because it was clearly labeled, only included with eight to fifteen other documents, and required its own signature.

## B. Claims Against American Airlines

Plaintiff argues that, even if the arbitration agreement is binding and enforceable, "[t]here is no basis to dismiss the entire case" because "American Airlines is not a party to the arbitration agreement" and Plaintiff "signed no arbitration agreement in connection with his employment with American Airlines." (Doc. 16 at 7-8). Defendants counter that the terms of the arbitration agreement provides that "all disputes, claims, complaints, or controversies . . . that I may have against TEKsystems, Inc. and/or any of its . . . *clients or customers* . . . are subject to confidential arbitration." (Doc. 19 at 8) (emphasis in original).

On April 23, 2021, this Court ordered Defendant American Airlines to file an opposition to the Motion to Compel Arbitration by May 7, 2021 if they opposed arbitration. (Doc. 20). American did not file an opposition, but in fact filed its own Motion to Compel Arbitration (Doc. 22). American argues it can enforce the arbitration agreement under the "alternative estoppel" theory of non-signatory enforcement of arbitration clauses against signatories. (Doc. 22 at 4). In response, Plaintiff argues that American waived the arbitration defense by failing to assert it in its answer. (Doc. 25 at 2-4). Plaintiff also argues that, even if American can enforce arbitration, the case should be stayed rather than dismissed. (Doc. 25 at 5).

### 1. *Waiver*

"Waiver of a contractual right to arbitration is not favored." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Any examination of whether the right to

8

compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements. *See Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983) (as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability); *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978) (waiver is not favored and the facts must be viewed in light of the strong federal policy supporting arbitration agreements). Because waiver of the right to arbitration is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982); *Brown v. E.F. Hutton & Co., Inc.*, 610 F.Supp. 76, 79 (S.D. Fla. 1985).

A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher*, 791 F.2d at 694 (citing *Shinto Shipping*, 572 F.2d at 1330). American does not argue it was unaware of the right to compel arbitration, so only the second and third elements are at issue here.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate," *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Rather, courts consider the totality of the parties' actions, *see id.* at 1126. Applying this holistic approach, we have generally asked whether a party's actions "indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate." *Id.* at 1125 (internal quotation marks omitted) (second alteration in original). "That is, a party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019); *see also City of Cottonwood v.*

*James L. Fann Contracting, Inc.*, 179 Ariz. 185, 190–91, 877 P.2d 284, 289–90 (Ct. App. 1994) ("Inconsistency usually is found when one party engages in conduct preventing arbitration, proceeds at all times in disregard of arbitration, expressly agrees to waive arbitration, or unreasonably delays requesting arbitration.").

Here, American Airlines only filed an answer to Plaintiff's complaint (Doc. 10) before filing the instant Motion to Compel Arbitration (Doc. 22). Although the answer failed to assert the affirmative defense of arbitration, American has not actively litigated the merits of the case for a prolonged period of time and in fact has made an intentional decision to move to compel arbitration. Inlight of American's actions and the strong policy against finding a waiver of arbitration, this Court finds that American has not acted inconsistent with its right to arbitrate.[1]

### 2. Alternative Estoppel

"[A] willing [nonsignatory] seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory, which takes into consideration the relationships of persons, wrongs, and issues." *Sun Valley Ranch 308 Ltd. P'ship*, 231 Ariz. 287, 296, 294 P.3d 125, 134 (Ct. App. 2012) (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003)) (internal citations omitted) (internal quotation marks omitted). Under this approach, a nonsignatory may enforce an arbitration agreement when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Sun Valley Ranch*, 294 P.3d at 134-35 (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)).

Here, the arbitration agreement compels arbitration for any claims that Plaintiff might have against TEKsystems "and/or any of its subsidiaries, affiliates, . . . and/or any

---

[1] Because the Court finds that American did not act inconsistently with its right to arbitrate, the Court need not consider the third factor, *i.e.* whether Plaintiff was prejudiced by such inconsistent acts.

10

of its clients or customers." (Doc. 13-1 at 9). Not allowing American, one of TEKsystems' clients, to enforce the agreement would render this clause of the agreement meaningless. Accordingly, this Court finds that American can enforce the arbitration agreement against Plaintiff pursuant to the alternative estoppel theory. Plaintiff's claims against American must proceed to arbitration.

### 3   Stay vs Dismissal

Finally, Plaintiff argues that the Court should stay this action rather than dismiss it. (Doc. 25 at 5). Section 3 of the Federal Arbitration Act provides that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C.A. § 3. However, when arbitration is mandatory, courts have discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely. *See Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 638 (9th Cir.1988); *see also Hopkins & Carley, ALC v. Thomson Elite*, No. 10–CV–05806, 2011 WL 1327359, at *7–8, 2011 U.S. Dist. LEXIS 38396, at *28–29 (N.D. Cal. Apr. 6, 2011) ("Where an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action.").

American requests that the Court "dismiss this action . . . or in the alternative, stay this action pending the completion of arbitration." (Doc. 26 at 5). Similarly, TEKsystems requests that the Court "dismiss the present lawsuit, or, in the alternative, compel arbitration and stay all proceedings pending completion of arbitration." (Doc. 13 at 1). And Plaintiff "requests this Court stay this matter, rather than dismiss it." (Doc. 25 at 5). However, the arbitration clause here is broad enough to cover all of Plaintiffs claims against both TEKsystems and American. Furthermore, dismissal would render this decision immediately appealable. *See MediVas, LLC v. Marubeni Corp*., 741 F.3d 4, 7 (9th Cir.2014) ("[A]n order compelling arbitration may be appealed if the district court dismisses all the underlying claims, but may not be appealed if the court stays the action pending arbitration.")). Accordingly, the Court concludes that dismissal is appropriate here.

**C. Costs and Fees**

Defendant TEKsystems also seeks reasonable costs and attorneys' fees incurred in bringing its Motion to Compel Arbitration pursuant to A.R.S. § 12-341.01. (Doc. 13 at 12).

A.R.S. § 12-341.01 allows the Court to, in its discretion, award attorneys' fees to a prevailing party in an action arising out of contract. Here, the action arises out of contract: the arbitration agreement. *See, e.g.*, *Collins v. Glick*, No. 1 CA-CV 20-0397, 2021 WL 1889724, at *1 (Ariz. Ct. App. May 11, 2021) (awarding attorneys' fees under A.R.S. § 12-341.01 for a motion to compel arbitration). The Court agrees that both Defendants are entitled to seek reasonable attorneys' fees and costs as the prevailing party. However, TEKsystems fails to provide any supporting documentation for its conclusory request embedded in its Motion. The request is therefore denied without prejudice, and Defendants may file a renewed fee request with supporting documentation pursuant to Local Rule of Civil Procedure 54.2. *See, e.g.*, *Edwards v. Vemma Nutrition*, 2019 WL 2173673, *8 (D. Ariz. 2019) (granting motion to dismiss but denying without prejudice a request for attorneys' fees under A.R.S. § 12-341.01 that was "[e]mbedded" within the motion because it was premature and insufficiently detailed); *Graham-Miller v. Nationstar Mortgage LLC*, 2012 WL 2368494, *5 (D. Ariz. 2012) ("[I]f Defendants wish to be awarded attorneys' fees under section 12–341.01, they must file a separate motion that complies with Local Rule 54.2, setting out the reasons this Court should exercise its discretion to award fees.").

**IT IS THEREFORE ORDERED** that Defendant TEKsystems Management Inc.'s Motion to Compel Arbitration (Doc. 13) is **granted**.

**IT IS FURTHER ORDERED** that Defendant American Airlines Incorporated's Motion to Compel Arbitration (Doc. 22) is **granted**.

**IT IS FURTHER ORDERED** that this case is **dismissed without prejudice**. The Clerk of Court shall terminate this action accordingly.

///

///

///

**IT IS FURTHER ORDERED** that Defendants shall file any application for attorneys' fees and costs in accordance with LRCiv. P. 54.2 by **June 13, 2021**.

Dated this 3rd day of June, 2021.

Honorable Steven P. Logan
United States District Judge